IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

FLOYD RICHARD LOVITT AND
CHERRIE F. LOVITT                                                                        PLAINTIFFS

VS.                                                                                  No. 2:04CV192-D-B

WAL-MART STORES, INC. ET. AL.                                                        DEFENDANTS

OPINION GRANTING IN PART AND DENYING IN PART
MOTION FOR SUMMARY JUDGMENT

Presently pending before the Court is Defendant Besam Automated Entrance Systems, Inc.'s ("Besam") motion for summary judgment. Upon due consideration, the Court finds that the motion shall be granted in part and denied in part.

*A. Factual Background*

On August 20, 2003, the Plaintiff, Floyd Lovitt, attempted to enter the grocery side exit door at the Wal-Mart Store in Olive Branch, Mississippi. The Plaintiff was driven to Wal-Mart by his full-time caretaker, Andrew Wooten. Lovitt was disabled and required assistance after having a stroke that left him partially paralyzed on his left side. Wooten walked ahead of the Plaintiff and attempted to locate a motorized cart. Lovitt walked towards the front entrance using four-pronged cane for assistance.

When Lovitt attempted to enter the store, he fell and broke his hip and shoulder. The parties hotly contest what caused Lovitt to fall. The Plaintiffs claim that the automatic doors at the entrance of Wal-Mart closed on him and caused him to fall. The Defendants claim that the Plaintiff was inside the store when he fell and out of the way of the doors. The Plaintiffs claim that the door closed on Lovitt and knocked the quad cane out of his hand causing him to lose his balance and fall.

The Plaintiffs further allege that the doors continued to close on him several times while he was lying on the ground. In his deposition, Lovitt could not specifically remember if the doors hit him or not and could not remember where the doors hit his body.

After Lovitt fell, two Wal-Mart employees noticed him and immediately went to his aid. One of the employees, JeMarco Hubbard, had his back turned when Lovitt fell. Hubbard turned around and saw Lovitt lying on the floor and the doors closing on him. Hubbard rushed to hold back the automatic door while another employee, Billy Sesson, helped Lovitt get up and into a wheelchair Although Sesson and Hubbard were in close proximity, neither one of them saw the Plaintiff fall. As mentioned above, the Plaintiff suffered a broken hip and broken shoulder. Lovitt had to have a hip replacement, which later had several complications. These complications resulted in the inability to ambulate for long periods of time. The inability to ambulate combined with Lovitt's pre-existing vascular disease caused ulcers to develop on his left leg. Those ulcers developed into necrosis and gangrene which caused an amputation of Lovitt's leg. The Plaintiffs allege that medical expert testimony will show that Lovitt's amputation was a direct result of his fall at Wal-Mart.

The Wal-Mart Store in Olive Branch has two main entrances each with two sets of automatic doors. One entrance is closest to the grocery side of the store and the other entrance is closest to the general merchandise side of the store. Each entrance has a set of doors for entrance and a set of doors for exit, although all doors are set-up for two-way traffic.

The automatic sliding doors and their component parts were manufactured by Besam. The doors were installed by Tri-State Auto Doors in January 2000 and were in place when the store opened for business. Each door is equipped with a sensor mechanism called the Eye-Cue. The Eye-Cue is mounted on top of the door with a sensor system on each side of the door. The Eye-Cue contains both a motion and presence sensor. As a person or object approaches the door, the motion

sensor detects movement and activates the door. When a person or object enters the threshold area of the door, the presence sensors detect the person or object and keep the door open. Once the object or person moves out of the threshold area to the other side of the door, the motion sensor on the opposite side detects the person moving away. When all detection ceases, then the door closes. Each of the sensors sends a signal to the motor to keep the door open while a person or object is detected and for 1.5 seconds afterward. An additional pressure sensor causes the door to open after it makes contact with a person or object.

After the doors were installed and until the end of 2002, Wal-Mart contacted Besam anytime the doors malfunctioned. Besam would dispatch either Southern Door of Mississippi or Tri-State Automatic Doors to make any necessary repairs. According to Besam's records, Besam's contractors performed service or made repairs to the grocery side exit door on seven occasions. However, during this time Wal-Mart had never requested that Besam perform an AAADM inspection or do preventative maintenance. An AAADM inspection is a certification program that ensures that automatic doors meet the standard of the American Association of Automatic Door Manufacturers.

In January 2003, Besam notified Wal-Mart that it could no longer supply new doors or provide maintenance services on Besam doors in existing stores. Thus, Wal-Mart entered into an agreement with The Stanley Works ("Stanley") in February 2003. That agreement provided that Stanley would provide maintenance and repair services for all automatic sliding doors in Wal-Mart stores. This agreement provided for repair services and preventative maintenance services, but allowed Stanley to conduct a certifying door inspection before the particular store fell within the preventative maintenance program.

In April 2003, pursuant to its agreement with Stanley, Wal-Mart contacted Stanley regarding the failure of the grocery side entrance door at the Olive Branch Store. Stanley contacted Mid-South

Automatic Doors ("Mid-South") to make a service call. On April 17, 2003, the Mid-South repairman, Paul Nabors, reset the controls on the grocery side entrance door. Nabors then performed a walk-through test of all of the automatic doors at the Olive Branch Wal-Mart Store. Nabors noted that all doors were working at the time of that walk-through. Nabors did not conduct a test on the motion and presence senors at that time.

After Lovitt's fall, Wal-Mart contacted Stanley and requested an inspection of all automatic sliding doors. On August 25, 2003, Nabors returned to the store and performed an AAADM inspection of the grocery side exit door and found a presence sensor had been disconnected. Nabors' inspection also revealed that none of the automatic sliding doors at the Olive Branch Store met the AAADM standards for safety. The presence sensors were unhooked on several of the doors. The absence of those sensors is not easily detectable. However, if a door keeps opening and closing on a stationary target, the sensors are not operable. It was noted that Wal-Mart did not perform daily safety checks on the doors, something the manufacturer recommended

The Plaintiffs filed this action on July 21, 2004. The Plaintiffs request relief on a variety of legal grounds. The Plaintiffs are suing Besam and Stanley for defective design, failure to warn, breach of express warranty, and breach of warranty under the UCC. The Plaintiffs also sue Crain Enterprises d/b/a Mid-South for breach of express warranty and breach of warranty under the UCC. Finally, the Plaintiffs sue Wal-Mart for negligence and negligence under *res ipsa loquitur*. The Plaintiffs sue all parties for compensatory damages including medical costs and also punitive damages.

Defendant Besam now moves this Court to enter judgment as a matter of law on all of the Plaintiffs' claims. Defendant Besam alleges that the Plaintiffs cannot prove Lovitt was knocked down by the doors. In addition, Defendant Besam states that the Plaintiffs have failed to establish

the essential elements of a claim under the Mississippi Products Liability Act. Specifically, Defendant Besam claims that the Plaintiffs have not offered a feasible alternative design. The Defendant also alleges that the Plaintiffs cannot offer proof to support their claims of inadequate warnings, express and implied warranties, nor negligence. Defendant Besam states that even if it was negligent, the negligence was too remote to have caused Plaintiff's injuries.

The Plaintiffs counter that there is sufficient proof to support all of its claims, including that the doors were the contributing cause of Lovitt's fall. In addition, the Plaintiffs state that their expert has produced three feasible alternative designs to the Defendant's product. The Plaintiffs allege that there are sufficient facts to create a jury question on all of its claims.

### B. Standard of Review

When considering a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. <u>Celotex Corp. V. Catrett</u>, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265, 275 (1986) (the burden on the moving party may be discharged by 'showing...that there is an absence of evidence to support the non-moving party's case" Under Rule 56(e) of the Federal Rules of Civil Procedure, the burden shifts to the non-movant to "go beyond the pleadings and by...affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trail.'" <u>Celotex Corp.</u>, 477 U.S. at 324, 106 S. Ct. At 2553, 91 L. Ed. 2d At 274. That burden is not discharged by "mere allegations or denials." Fed. R. Civ. P. 56(e). All legitimate factual inferences must be made in favor of the non-movant. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255, 106 S. Ct 2505, 2513, 91 L. Ed. 2d 202, 216 (1986). Rule 56(C) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

Celotex Corp., 477 U.S. at 322, 106 S. Ct. At 2552, 91 L. Ed. 2d at 273. Before finding that no genuine issue for trial exists, the court must first be satisfied that no reasonable trier of fact could find for the non-movant. Matsushita Elec. Indus. V. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 536, 552 (1986).

*C. Discussion*

1. Failure to Warn/Inadequate Warning Claim

A manufacturer or seller of a product may only be liable under the Mississippi Products Liability Act for failure to provide adequate warning if the Plaintiff can prove by a preponderance of the evidence that at the time the product left the control of the manufacturer or seller, the manufacturer or seller knew or should have known about the danger that caused the subject injury and that the ordinary person would not know of its dangerous condition. Miss Code Ann. § 11-1-63(c)(i). An adequate product warning is one that a reasonably prudent person in similar circumstances would have provided with respect to the danger posed and that warning communicates sufficient information about the danger. Miss. Code Ann. § 11-1-63(c)(ii)

In Mississippi, a warning may be held adequate if the adverse effect was one which the manufacturer specifically warned against. Austin v. Will-Burt Co., 361 F.3d 862, 868 (5th Cir. 2004). Under the Mississippi Products Liability Act, a plaintiff must prove that the failure to adequately warn against a danger was the proximate cause of the Plaintiff's injuries. See Wolf v. Stanley Works, 757 So. 2d 316, 323 (Miss. App. 2000). The Plaintiff must show that an adequate warning would have altered the Plaintiff's conduct in using the product. Little v. Liquid Air Corp., 37 F.3d 1069, 1076 (5th Cir. 1994) (*citing* Wyeth Labs, Inc. v. Fortenberry, 530 So. 2d 688, 691 (Miss. 1988)).

In the case *sub judice*, the Plaintiffs have failed to submit any proof that an inadequate

warning was the proximate cause of Lovitt's injuries. In fact, the Plaintiffs basically conceded this claim in several ways. First, the Plaintiff testified that he saw warnings on the door, but did not read them or remember what they said. Second, the Plaintiffs' expert witness stated that the warnings met the industry's standards. Third, the doors had large warnings stating "Caution Automatic Door" and a sign stating "Please use other door." Fourth, the Plaintiffs failed to respond to this portion of Defendant Besam's motion. Therefore, the Court finds there are no genuine issues of material fact on Plaintiffs' failure to warn claim against Besam. Thus, Defendant Besam is entitled to judgment as a matter of law on that claim.

2.  Defective Design, Breach of Express and Implied Warranties, and Negligence Claims

The court finds that genuine issues of material fact exist, and that the Defendant has failed to show that it is entitled to judgment as a matter of law. Further, the court has the discretion, which it exercises here, to allow the Plaintiff's claims to proceed to trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986) ("Neither do we suggest ... that the trial court may not deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial."). Thus, the Defendant's motion for summary judgment is denied as to Plaintiffs' defective design and manufacturing, breach of express warranty, breach of implied warranties, and negligence claims.

*D. Conclusion*

Upon review of the parties' briefs and submissions, the Court finds that Defendant Besam provided adequate warnings on the automatic doors it manufactured. The Court further finds that no genuine issues of material fact exist on Plaintiffs' failure to warn claim and that the Defendant is entitled to judgment as a matter of law. However, the Court further finds that significant issues of material fact exist as to Plaintiffs' defective design and manufacturing, breach of express warranty,

breach of implied warranties, and negligence claims.  Thus, those issues will proceed to trial.

A separate order in accordance with this opinion shall issue this day.

This the 16th day of May 2006.


/s/ Glen H. Davidson
Chief Judge