IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

FLOYD RICHARD LOVITT AND
CHERRIE F. LOVITT                                                                                    PLAINTIFFS

VS.                                                                                                        No. 2:04CV192-D-B

WAL-MART STORES, INC. ET. AL.                                                                DEFENDANTS

OPINION DENYING MOTION FOR SUMMARY JUDGMENT

Presently pending before the Court is Defendant Besam Automated Entrance Systems, Inc.'s ("Besam") motion for summary judgment on Defendant Wal-Mart's cross-claims. Upon due consideration, the Court finds that the motion shall be denied.

*A. Factual Background*

On August 20, 2003, the Plaintiff, Floyd Lovitt, attempted to enter the grocery side exit door at the Wal-Mart Store in Olive Branch, Mississippi. The Plaintiff was driven to Wal-Mart by his full-time caretaker, Andrew Wooten. Lovitt was disabled and required assistance after having a stroke that left him partially paralyzed on his left side. Wooten walked ahead of the Plaintiff and attempted to locate a motorized cart. Lovitt walked towards the front entrance with his four-pronged cane.

When Lovitt attempted to enter the store, he fell and broke his hip and shoulder. The parties hotly contest what caused Lovitt to fall. The Plaintiffs claim that the automatic doors at the entrance of Wal-Mart closed on him and caused him to fall. The Defendants claim that the Plaintiff was inside the store when he fell and out of the way of the doors. The Plaintiffs claim that the door closed on Lovitt and knocked the quad cane out of his hand causing him to lose his balance and fall. The Plaintiffs further allege that the doors continued to close on him several times while he was laying on the ground. In his deposition, Lovitt could not specifically remember if the doors hit him

or not and could not remember where the doors hit his body.

After Lovitt fell, two Wal-Mart employees noticed him and immediately went to his aid. One of the employees, JeMarco Hubbard, had his back turned when Lovitt fell. Hubbard turned around and saw Lovitt lying on the floor and the door closing on him. Hubbard rushed to hold back the automatic door while another employee, Billy Sesson, helped Lovitt get up and into a wheelchair Although Sesson and Hubbard were in close proximity, neither one of them saw the Plaintiff fall. As mentioned above, the Plaintiff suffered a broken hip and broken shoulder. Lovitt had to have a hip replacement, which later had several complications. These complications resulted in the inability to ambulate for long periods of time. The inability to ambulate combined with Lovitt's pre-existing vascular disease caused ulcers to develop on his left leg. Those ulcers developed into necrosis and gangrene which caused an amputation of Lovitt's leg. The Plaintiffs allege that medical expert testimony will show that Lovitt's amputation was a direct result of his fall at Wal-Mart.

The Wal-Mart Store in Olive Branch has two main entrances each with two sets of automatic doors. One entrance is closest to the grocery side of the store and the other entrance is closest to the general merchandise side of the store. Each entrance has a set of doors for entrance and a set of doors for exit, although all doors are set-up for two-way traffic.

The automatic sliding doors and their component parts were manufactured by Besam. The doors were installed by Tri-State Auto Doors in January 2000 and were in place when the store opened for business. Each door is equipped with a sensor mechanism called the Eye-Cue. The Eye-Cue is mounted on top of the door with a sensor system on each side of the door. The Eye-Cue contains both a motion and presence sensor. As a person or object approaches the door, the motion sensor detects movement and activates the door. When a person or object enters the threshold area of the door, the presence sensors detect the person or object and keep the door open. Once the object

or person moves out of the threshold area to the other side of the door, the motion sensor on the opposite side detects the person moving away. When all detection ceases, then the door closes. Each of the sensors sends a signal to the motor to keep the door open while a person or object is detected and for 1.5 seconds afterward. An additional pressure sensor causes the door to open after it makes contact with a person or object.

After the doors were installed and until the end of 2002, Wal-Mart contacted Besam anytime the doors malfunctioned. Besam would dispatch either Southern Door of Mississippi or Tri-State Automatic Doors to make any necessary repairs. According to Besam's records, Besam's contractors performed service or made repairs to the grocery side exit door on seven occasions. However, during this time Wal-Mart had never requested that Besam perform an AAADM inspection or do preventative maintenance. An AAADM inspection is a certification program that ensures that automatic doors meet the standard of the American Association of Automatic Door Manufacturers.

In January 2003, Besam notified Wal-Mart that it could no longer supply new doors or provide maintenance services on Besam doors in existing stores. Thus, Wal-Mart entered into an agreement with The Stanley Works, Inc., ("Stanley") in February 2003. That agreement provided that Stanley would provide maintenance and repair services for all automatic sliding doors in Wal-Mart stores. This agreement provided for repair services and preventative maintenance services, but allowed Stanley to conduct a certifying door inspection before the particular store fell within the preventative maintenance program.

In April 2003, pursuant to its agreement with Stanley, Wal-Mart contacted Stanley regarding the failure of the grocery side entrance door at the Olive Branch Store. Stanley contacted Mid-South Automatic Doors ("Mid-South") to make a service call. On April 17, 2003, the Mid-South repairman, Paul Nabors, reset the controls on the grocery side entrance door. Nabors then performed

a walk-through test of all of the automatic doors at the Olive Branch Wal-Mart Store. Nabors noted that all doors were working at the time of that walk-through. Nabors did not conduct a test on the motion and presence senors at that time.

After Lovitt's fall, Wal-Mart contacted Stanley and requested an inspection of all automatic sliding doors. On August 25, 2003, Nabors returned to the store and performed an AAADM inspection of the grocery side exit door and found a presence sensor had been disconnected. Nabors' inspection also revealed that none of the automatic sliding doors at the Olive Branch Store met the AAADM standards for safety. The presence sensors were unhooked on several of the doors. The absence of those sensors is not easily detectable. However, if a door keeps opening and closing on a stationary target, the sensors are not operable. It was noted that Wal-Mart did not perform daily safety checks on the doors, something the manufacturer recommends.

The Plaintiffs filed this action on July 21, 2004. The Plaintiffs request relief on a variety of legal grounds. The Plaintiffs are suing Besam and Stanley for defective design, failure to warn, breach of express warranty, and breach of warranty under the UCC. The Plaintiffs also sue Crain Enterprises d/b/a Mid-South for breach of express warranty and breach of warranty under the UCC. Finally, the Plaintiffs sue Wal-Mart for negligence and negligence under *res ipsa loquitur*. The Plaintiffs sue all parties for compensatory damages including medical costs and also punitive damages.

Defendant Besam now moves this Court to enter summary judgment on all of Defendant Wal-Mart's cross claims against Besam. Defendant Besam alleges that Wal-Mart cannot make a claim under the Mississippi Products Liability Act for defective design and manufacturing. In addition, Defendant Besam states that it did not give Wal-Mart an express warranty on its doors. Finally, Besam alleges that Wal-Mart cannot prove it was negligent. Defendant Wal-Mart counters

and states that there are sufficient issues of genuine material fact relating to negligence and defective design in this case.

### B. Standard of Review

When considering a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. V. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265, 275 (1986) (the burden on the moving party may be discharged by 'showing...that there is an absence of evidence to support the non-moving party's case" Under Rule 56(e) of the Federal Rules of Civil Procedure, the burden shifts to the non-movant to "go beyond the pleadings and by...affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trail.'" Celotex Corp., 477 U.S. at 324, 106 S. Ct. At 2553, 91 L. Ed. 2d At 274. That burden is not discharged by "mere allegations or denials." Fed. R. Civ. P. 56(e). All legitimate factual inferences must be made in favor of the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct 2505, 2513, 91 L. Ed. 2d 202, 216 (1986). Rule 56(C) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322, 106 S. Ct. At 2552, 91 L. Ed. 2d at 273. Before finding that no genuine issue for trial exists, the court must first be satisfied that no reasonable trier of fact could find for the non-movant. Matsushita Elec. Indus. V. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 536, 552 (1986).

### C. Discussion

The court finds that genuine issues of material fact exist, and that the Defendant has failed to show that it is entitled to judgment as a matter of law. Further, the court has the discretion, which

it exercises here, to allow the Plaintiff's claims to proceed to trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986) ("Neither do we suggest ... that the trial court may not deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial."). Thus, the Defendant's motion for summary judgment is denied.

### D. Conclusion

Upon review of the parties' briefs and submissions, the Court finds that significant issues of genuine material fact exist and that Defendant Besam is not entitled to judgment as a matter of law on Defendant Wal-Mart's cross-claims against Defendant Besam.

A separate order in accordance with this opinion shall issue this day.

This the 18th day of May 2006.

/s/ Glen H. Davidson
Chief Judge